UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:

ROBIN SIFF,

       Plaintiff,

vs.

AUDIOLOGY DISTRIBUTION, LLC,
a foreign limited liability company,
d/b/a HEARUSA,

       Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

The Plaintiff, ROBIN SIFF (hereinafter referred to as "Siff"), by and through her undersigned counsel, sues the Defendant, AUDIOLOGY DISTRIBUTION, LLC, a foreign limited liability company, d/b/a HEARUSA (hereinafter referred to as "HearUSA"), and for her cause of action, declares and avers as follows:

## I. PRELIMINARY STATEMENT

1.    This action seeks declaratory, injunctive and equitable relief, equitable damages, compensatory damages, punitive damages, costs and attorney's fees for (1) discharging Siff or otherwise discriminating against Siff with respect to her compensation, terms, conditions, or privileges of employment, because of her race/ancestry and/or national origin and/or religion, in violation of Title VII; (2) limiting, segregating, or classifying Siff in a way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect her status as an employee, because of her race/ancestry, religion, and/or national origin, in violation of Title VII; (3) discharging Siff or otherwise discriminating against Siff with respect to her compensation, terms, conditions, or privileges of employment, because she is Jewish, in violation of Section 1981; (4) limiting, segregating, or

classifying Siff in a way which deprived or tended to deprive her of employment opportunities or otherwise adversely affect her status as an employee, because she is Jewish, in violation of Section 1981; and (5) retaliating against Siff because she opposed unlawful employment practices, in violation of Title VII and Section 1981.

2.       This action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a (hereinafter referred to as "Title VII"), and the Reconstruction Era Civil Rights Act of 1866, 42 U.S.C. § 1981 (hereinafter referred to as "Section 1981").

## II.  JURISDICTION

3.       Jurisdiction is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(4) and 42 U.S.C. §2000e-5(f). All administrative requirements have been exhausted and a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission ("EEOC") on or about May 10, 2019, based upon a charge of discrimination timely and dually-filed with the EEOC and Florida Commission on Human Relations ("FCHR") on or about April 29, 2019.

4.       Plaintiff reserves the right to move the Court for leave to amend this Complaint to add a claim arising under the Florida Civil Rights Act of 1992 ("FCRA"), in the event the FCHR determines there is reasonable cause to believe that a discriminatory practice has occurred in violation of the FCRA or in the event the FCHR fails to conciliate or determine whether there is reasonable cause on Plaintiff's charge of discrimination within 180 days of the filing of the Plaintiff's charge of discrimination, pursuant to § 760.11(4) and/or (8), Fla. Stat.

### III.  VENUE

4.      This action properly lies in the Southern District of Florida pursuant to 28 U.S.C. §1391(b) because the claims arose in this judicial district.

### IV.  FACTS

5.      Siff is a citizen and resident of Broward County, Florida, over the age of eighteen (18), within the Court's jurisdiction and otherwise *sui juris*.

6.      HearUSA is a foreign limited liability company, authorized to do and doing business in the State of Florida.

7.      At all times material hereto, HearUSA was a covered employer, and Siff was a covered employee, within the meaning of Title VII.

8.      Siff is American (non-Hispanic), not fluent in the Spanish language, and Jewish.  As such, Siff is a member of several protected classes under Title VII and Section 1981 as same relates to her race/ancestry, religion and national origin.

9.      HearUSA employed Siff for approximately 21 years as an audiologist/hearing aid sales professional, locating her at its Hollywood, Florida office since 2002.

10.      At all times material hereto, Siff was qualified for her position and performed her job competently.  Indeed, by virtue of her job performance, customer service and lengthy tenure and stability at HearUSA's Hollywood office, Siff was able to develop many substantial relationships with patients/clients over the years.  Moreover, Siff always received positive performance evaluations and over the years received awards, commendations and appropriate financial rewards in recognition of her job performance and the overall value she brought to the company.  Significantly, Siff continued to win awards based on her excellent customer service even after she was terminated by HearUSA.

11.     In or about November 2017, Adriana Galvis became Siff's direct supervisor.  Galvis is Hispanic, fluent in Spanish and not Jewish.

12.     At all times material hereto, Galvis had power and control over Siff including, but not limited to, the power to terminate Siff or, in the alternative, to influence or effect final corporate decisions regarding the termination of Siff.

13.     Since HearUSA employed Galvis and vested her with supervisory authority and control over Siff, including but not limited to the power to terminate Siff, or, in the alternative, to effectively cause or bring about the termination of Siff, Hear USA is responsible for the acts and conduct of Galvis.

14.     Upon her arrival, and at all times material hereto, Galvis immediately impacted the HearUSA work environment in a negative way, unprofessionally choosing to speak with bilingual clients in Spanish in front of Siff, as well as during marketing presentations, making Siff extremely uncomfortable.  Moreover, Galvis went so far as to suggest that Siff's bilingual clients be transferred to a different sales representative (Jose), notwithstanding Siff never had any issues communicating with any of these clients, bilingual or otherwise.

15.     Just months after her arrival, around the March-April 2018 time frame, Galvis' discriminatory attitude toward Siff was on full display when out of the blue, Galvis attempted to persuade Siff to transfer to HearUSA's new Davie location so that she (Galvis) could bring someone bilingual into the Hollywood office in place of Siff.  Siff declined, mostly for reasons related to the fact that she was extremely devoted to her Hollywood patient clientele.

16.     Galvis' next move was to inform Siff that HearUSA no longer would honor a previous agreement it had with Siff, regarding her work schedule.  Prior to Galvis' arrival, Siff and HearUSA mutually agreed to a permanent change in Siff's work schedule that allowed for Siff to not work on

every other Friday, in order to accommodate her parental commitments during the school year. While HearUSA did not pay Siff when she did not work Fridays, neither did this accommodation have any *negative* impact on her compensation or benefits otherwise. During the summer months, the schedule would revert back to the usual two-week schedule (Monday-Friday). However, in the Spring of 2018, Galvis informed Siff that she would be expected, and in fact required, to use her previously accrued vacation time off (or "PTO") if she wanted to continue to be paid her full salary, in order to "cover" the eight hours of "missed time" on any Friday she did not work, forcing Siff either to work on those Fridays, or suffer a decrease in her accrued vacation benefits. Ultimately, when the new school year started in the Fall of 2018, Galvis advised Siff she no longer would be able to take every other Friday off *at all*, regardless of whether Siff had accrued PTO. Galvis even characterized Siff's previously approved schedule modification as "unfortunate". 17. Moreover, as of this juncture, Galvis advised Siff she would be expected to report to work at 8:30 am each morning, as opposed to the previous report time of 9:00 am. In fact, Galvis arbitrarily enforced this new reporting time throughout the region over which she had oversight, treating Siff disparately as compared to other audiologists/hearing aid sales professionals in the region.

18.     Most significantly, in early August 2018, Siff advised HearUSA, *as she did every year as an observant Jew*, of her intent to take two (2) days off in September in order to observe the Jewish high holiday of Rosh Hashanah. Remarkably, Galvis denied Siff's PTO request, without so much as a reason or explanation.

19.     Consequently, Siff elevated her concern to those in HearUSA management above Galvis, notifying the company in writing of Galvis' discriminatory denial of her PTO request.

20.     As a result of Siff's statutorily protected expression of opposing Galvis' discriminatory denial of her PTO request, Galvis suddenly rescinded her denial.

21.     During the ensuing months, Galvis continuously expressed her discriminatory attitude toward Jews in general, directing her subordinate to send an email to the region's employees, including "encouraging" those employees who were off for the Jewish holidays to work on Sundays in order to meet the office's sales targets.  Significantly, Siff was the only employee under Galvis' supervision to whom this applied, since she was the only employee in Galvis' region who was "off" for the Jewish holidays.

22.     Notably, when Siff submitted another PTO request in September 2018, in order to take time off two months later in November 2018 (having nothing to do with any religious reasons), Galvis inappropriately questioned Siff as to whether this latest PTO request was for a "holyday".  Quite frankly, Galvis' original denial of Siff's request to use her PTO time for Rosh Hashanah, as well as her questioning of Siff's subsequent request to use her accrued PTO time in November, was completely discriminatory under any circumstance, as Siff had accrued and was eligible to take up to six (6) weeks of PTO per year by this point in her time with HearUSA, and never had been given a difficult time about using it for protected holidays or otherwise.

23.     On or about November 5, 2018, Galvis gave Siff a written warning, which Siff refused to sign, as it was inaccurate, false and completely retaliatory.  Significantly, the pretextual nature of the document was obvious, as not only did Galvis use a recent alleged event in order to discipline Siff, but Galvis also took this opportunity to "pile on" Siff by including in the written warning further admonishment for alleged incidents taking place ten (10) months earlier, for which Siff at the time allegedly was *verbally* counseled (although there is no supporting documentation for most if not all of these verbal "previous disciplines").

24.     A month later, in December 2018, Galvis' obvious pattern of retaliation continued, placing Siff on a Performance Improvement Plan, this time referencing the poor sales numbers for the

6

entire Hollywood office, along with her own November 5, 2018 written warning that she previously gave to Siff, apparently as examples of her unacceptable job performance, advising Siff that she had until January 31, 2019 to show "significant and sustained improvement".

25.     Significantly, on or about January 24, 2019, Galvis specifically took the opportunity to congratulate the *entire* Hollywood office for achieving + $32.487 above its target sales as of that date.  The February numbers for the Hollywood office well exceeded the target also, and, as of the end of March 2019, the Hollywood office was + $32.745 above its target.

26.     Notwithstanding, on or about Friday, March 29, 2019, Galvis fired Siff, as a result of a fabricated, manipulated and/or exaggerated client complaint, advising Siff to clean out her office and immediately leave the premises.

27.     As a result of the termination, Siff lost an over twenty-one (21) year job, along with its commensurate six (6) figure salary and substantial benefits (health, dental, life, 401k with match, malpractice insurance costs, state licensing fees, continuing education costs, etc.), thereby destroying the career for which she had worked so tirelessly.  Siff also lost her career identity and is completely emotionally devastated as a result of Galvis' destruction of her HearUSA career.  And obviously, Siff's professional reputation has been significantly tarnished as a result of Galvis' despicable discriminatory conduct.

28.     As a result of her termination, Siff has suffered a tremendous economic loss.  And, even with appropriate mitigation, which interim earnings certainly will reduce Siff's economic damages, Siff has not been able to successfully obtain an employment opportunity *substantially equivalent* to that which she has lost at HearUSA by virtue of Galvis' discrimination.

## COUNT I - RACE/NATIONAL ORIGIN/RELIGIOUS DISCRIMINATION - TITLE VII

29.    Siff incorporates as if fully realleged herein paragraphs 1 through 28.

30.    As a non-Hispanic Jewish American, at all times material hereto, Siff was a member of several protected classes for purposes of Title VII.

31.    Through its above-described acts and conduct toward Siff, HearUSA has violated Siff's rights under Title VII.

32.    HearUSA engaged in discriminatory acts and conduct against Siff with malice and/or reckless indifference to Siff's rights under Title VII.

33.    Siff has suffered direct pecuniary losses as a result of HearUSA's above-described violations of Title VII.

34.    Siff has suffered, is now suffering, and will continue to suffer emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of HearUSA's discriminatory acts and conduct.

35.    Siff will suffer future pecuniary losses as a direct result of HearUSA's discriminatory acts and conduct.

36.    Siff has no plain, adequate, or complete remedy at law to redress the wrongs alleged and is now suffering and will continue to suffer irreparable injury from her treatment by HearUSA unless HearUSA is enjoined by this Court.

**WHEREFORE**, Plaintiff, Robin Siff, prays that this Honorable Court:

A.    Declare HearUSA's conduct to be in violation of Siff's civil rights;

B.    Enjoin HearUSA from further engaging in such conduct;

C.    Award Siff equitable damages in the form of back pay;

8

D.      Award Siff the equitable remedy of reinstatement, or, in the alternative, award Siff

front pay in lieu of reinstatement;

E.      Award Siff compensatory and punitive damages;

F.      Award Siff costs and reasonable attorney's fees; and

G.      Grant such other and further relief as may be deemed just and proper in the premises.

## COUNT II - RACE DISCRIMINATION - SECTION 1981

37.      Siff incorporates as if fully realleged herein paragraphs 1 through 28.

38.      As a non-Hispanic Jewish American, at all times material hereto, Siff was protected

from discriminatory treatment by Section 1981.

39.      Through its above-described acts and conduct toward Siff, HearUSA has violated Siff's

rights under Section 1981.

40.      HearUSA engaged in discriminatory acts and conduct against Siff with malice and/or

reckless indifference to Siff's rights under Section 1981.

41.      Siff has suffered direct pecuniary losses as a result of HearUSA's above-described

violations of Section 1981.

42.      Siff has suffered, is now suffering, and will continue to suffer emotional pain and

suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as

a direct result of HearUSA's discriminatory acts and conduct.

43.      Siff will suffer future pecuniary losses as a direct result of HearUSA's discriminatory

acts and conduct.

44.      Siff has no plain, adequate, or complete remedy at law to redress the wrongs alleged

and is now suffering and will continue to suffer irreparable injury from her treatment by HearUSA

unless HearUSA is enjoined by this Court.

9

**WHEREFORE**, Plaintiff, Robin Siff, prays that this Honorable Court:

A.  Declare HearUSA's conduct to be in violation of Siff's civil rights;

B.  Enjoin HearUSA from further engaging in such conduct;

C.  Award Siff equitable damages in the form of back pay;

D.  Award Siff the equitable remedy of reinstatement, or, in the alternative, award Siff front pay in lieu of reinstatement;

E.  Award Siff compensatory and punitive damages;

F.  Award Siff costs and reasonable attorney's fees; and

G.  Grant such other and further relief as may be deemed just and proper in the premises.

## COUNT III – RETALIATION PURSUANT TO TITLE VII

45.  Siff  incorporates as if fully realleged herein paragraphs 1 through 28.

46.  Through its above-described acts and conduct toward Siff , HearUSA has violated Siff's rights under Title VII.

47.  HearUSA engaged in discriminatory acts and conduct against Siff with malice and/or with reckless indifference to Siff 's rights under Title VII.

48.  Siff  has suffered direct pecuniary losses as a result of HearUSA's above-described violations of Title VII.

49.  Siff  has suffered, is now suffering, and will continue to suffer emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of HearUSA's discriminatory acts and conduct.

50.  Siff  will suffer future pecuniary losses as a direct result of HearUSA's discriminatory acts and conduct.

51.  Siff  has no plain, adequate, or complete remedy at law to redress the wrongs alleged

10

and is now suffering and will continue to suffer irreparable injury from her treatment by HearUSA unless HearUSA is enjoined by this Court.

WHEREFORE, Plaintiff, ROBIN SIFF, prays that this Honorable Court:

A.    Declare HearUSA's conduct to be in violation of Siff's civil rights;

B.    Enjoin HearUSA from engaging in such conduct;

C.    Award the equitable remedy of back pay and front pay, in lieu of reinstatement;

D.    Award compensatory and punitive damages to Siff ;

E.    Award Siff  costs and reasonable attorney's fees; and

F.    Grant such other and further relief as may be deemed just and proper in the premises.

## COUNT IV – RETALIATION PURSUANT TO SECTION 1981

52.    Siff  incorporates as if fully realleged herein paragraphs 1 through 28.

53.    Through its above-described acts and conduct toward Siff , HearUSA has violated Siff's rights under Section 1981.

54.    HearUSA engaged in discriminatory acts and conduct against Siff  with malice and/or with reckless indifference to Siff 's rights under Section 1981.

55.    Siff  has suffered direct pecuniary losses as a result of HearUSA's above-described violations of Section 1981.

56.    Siff  has suffered, is now suffering, and will continue to suffer emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses as a direct result of HearUSA's discriminatory acts and conduct.

57.    Siff  will suffer future pecuniary losses as a direct result of HearUSA's discriminatory acts and conduct.

11

58.     Siff  has no plain, adequate, or complete remedy at law to redress the wrongs alleged and is now suffering and will continue to suffer irreparable injury from her treatment by HearUSA unless HearUSA is enjoined by this Court.

WHEREFORE, Plaintiff, ROBIN SIFF, prays that this Honorable Court:

A.     Declare HearUSA's conduct to be in violation of Siff 's civil rights;

B.     Enjoin HearUSA from engaging in such conduct;

C.     Award the equitable remedy of back pay and front pay, in lieu of reinstatement;

D.     Award compensatory and punitive damages to Siff ;

E.     Award Siff costs and reasonable attorney's fees; and

F.     Grant such other and further relief as may be deemed just and proper in the premises.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Dated:  June 26, 2019                     Respectfully submitted,
        Boca Raton, FL


                                          */s Daniel R. Levine*_____
                                          DANIEL R. LEVINE, ESQUIRE
                                          Fla. Bar No. 0057861
                                          E-Mail:  DRL@PBL-Law.com
                                          Padula Bennardo Levine, LLP
                                          3837 NW Boca Raton Blvd., Suite 200
                                          Boca Raton, FL  33431
                                          Telephone:     (561) 544-8900
                                          Facsimile:     (561) 544-8999
                                          Counsel for Plaintiff